# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

BRYAN STANLEY,

Plaintiff,

vs.

OLD DOMINION FREIGHT LINE, INC. and ISAAC STOVALL,

Defendants.

CASE NO.: 2:21-cv-02369
JUDGE JON P. McCALLA

---

## NOTICE OF DISCLOSURE OF EXPERT AND
## FILING OF RULE 26(A)(2)(B) REPORT OF SCOTT L. TURNER

**COMES NOW** Plaintiff, by and though undersigned counsel and hereby provides notice of Plaintiff's expert disclosure and filing of Rule 26(a)(2)(B) Expert Report of Scott L. Turner, which contains the following documents:

1. Expert Report of Scott L. Turner;

2. Exhibit A – CV of Scott L. Turner;

3. Exhibit B – Fee Schedule and Billing Records of Scott L. Turner; and

4. Exhibit C – Deposition/Trial Testimony List of Scott L. Turner

Dated: June 10, 2022

Respectfully submitted,
**THE COCHRAN FIRM – MEMPHIS**

*/s/ Howard B. Manis*
HOWARD B. MANIS, ESQ.
Tennessee Bar No. 16202
40 South Main, Ste. 1700
Memphis, TN 38103
Telephone: 901-523-1222
Facsimile: 901-523-1999
hmanis@cochranfirmmidsouth.com
**THE MOORE LAW GROUP, LLC**

*/s/ John A. Moore*
JOHN A. MOORE, ESQ.
Georgia Bar No. 519792 (*Admitted Pro Hac*)
1745 MLK Jr. Drive, NW
Atlanta, GA 30314
Telephone: 678-288-5601
Facsimile: 888-726-4355
jmoore@moorelawllc.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has served a true and accurate copy of the foregoing NOTICE OF DISCLOSURE OF EXPERT AND FILING OF RULE 26(A)(2)(B) REPORT OF SCOTT L. TURNER on the 10th day of June 2022 upon the following:

Carl Wyatt, Esq.
Glassman, Wyatt, Tuttle & Cox, P.C.
26 North Second Street
Memphis, TN 38103
cwyatt@gewwlaw.com

*Counsel for Defendants*

Dated:  June 10, 2022

**THE MOORE LAW GROUP, LLC**

*/s/ John A. Moore*
JOHN A. MOORE, ESQ.
Georgia Bar No. 519792 (*Admitted Pro Hac*)
1745 MLK Jr. Drive, NW
Atlanta, GA 30314
Telephone: 678-288-5601
Facsimile: 888-726-4355
jmoore@moorelawllc.com



# Truck Accident & Incident Experts, LLC
## dba/ Scott L Turner Consulting
14174 Charthouse Ct. Naples, Florida 34114
844-974-1870

# Expert  Report of Scott L. Turner

### June 9, 2022

### The United States District Court for the Western District of Tennessee, Western Division, Memphis, Tennessee

### Docket Number: No. 2:21-CV-02369

### Bryan Stanley

### Plaintiff

### V.

### Old Dominion Freight Line, Inc., and Isaac Stovall

### Defendant



# Truck Accident & Incident Experts, LLC

### dba/ Scott L Turner Consulting
#### 14174 Charthouse Ct. Naples, FL 34114
#### 844-974-1870

**Date:** June 9, 2022

**Report by** Scott L. Turner

**Prepared for:** John A. Moore, Esq.
     The Moore Law Group, LLC
     1745 Martin Luther King Jr. Drive, NW
     Atlanta, Georgia 30314

**Case Caption:** Bryan Stanley vs. Old Dominion Freight Line, Inc., and Isaac Stovall

**Jurisdiction:** The United States District Court for the Western District of Tennessee,
     Western Division, Memphis, Tennessee

**Cause/Case/Docket Number:** 2:21-CV-02369


<u>General Information:</u>

**Date & Time of Crash/Loss:** Sunday July 12, 2020 / Approximately 11:00 AM CST

**Location of Crash/Loss:** 2098 Spirit of '76 Drive, Memphis, Tennessee

**Equipment Involved: Plaintiff:** Pedestrian/Contract Dock Worker

       **Defendant:** 2014 Kalmar – Ottawa Switcher
          2014 Wabash Semi-Trailer
          (VIN: 1JJV281D5FL84944)

**Motor Carrier USDOT Number(s):** 90849

**Motor Carrier Status:** Authorized for Property

**Weather Conditions:** Mostly Cloudy/Cloudy

**Road Surface Conditions:** Dry (Loading Dock Apron Area)

**Posted Speed Limit:** N/A

**Natural Lighting Conditions:** Hours of Daylight

**Artificial Lighting Conditions:** N/A

## 1.0 Persons and Organizations:

➢ Old Dominion Freight Line, Inc. (hereinafter "Old Dominion"): Old Dominion is the Defendant and/or Motor Carrier with FMCSA interstate operating authority. Old Dominion is owner of the subject CMV and Ottawa Switcher and the employer of CMV and/or Switcher driver Stovall on the day and time of the subject pedestrian crushing incident. Old Dominion is the Motor Carrier who owns the facility where the subject pedestrian crushing incident occurred.

➢ Bryan Stanley (hereinafter "Stanley"): Stanley is classed as a pedestrian in the subject pedestrian crushing incident. Stanley was crushed between the semi-trailer and the loading dock of which he was engaged in the repair of on the day and time of the subject pedestrian crushing incident.

➢ Isaac M. Stovall (hereinafter "Stovall"): Stovall was the professional CMV and/or Switcher driver of the Ottawa Switcher that backed the CMV semi-trailer into the loading dock thereby crushing Stanley. Stovall was an *employee* of Old Dominion on the day and time of the subject pedestrian crushing incident.

**Note:** Only persons, organizations and/or witnesses referenced in the body of this report are descriptive above. For a list of the entirety of persons and organizations involved in this litigation, please see Documents Reviewed section below.

## 2.0 Abbreviations and Acronyms:

➢ USDOT – United States Department of Transportation
➢ 49 CFR – USDOT, Code of Federal Regulations
➢ FMCSA – Federal Motor Carrier Safety Administration
➢ FMCSR – Federal Motor Carrier Safety Regulations
➢ MCSAP – Motor Carrier Safety Assistance Program
➢ CMV – Commercial Motor Vehicle
➢ ATRI – American Transportation Research Institute
➢ AAMVA – American Association of Motor Vehicle Administrators
➢ NATMI – North American Traffic Management Institute
➢ FHWA – Federal Highway Administration
➢ OTR – Over the Road
➢ CVSA – Commercial Vehicle Safety Alliance
➢ LTL – Less Than Load
➢ NSC – National Safety Council

> ➢ CDL – Commercial Driver's License
> ➢ PCI – Post-Crash Inspection

## 3.0 General Description:

Stanley was crushed between the semi-trailer chassis as the CMV semi-trailer was being backed into the slot by a yard Switcher tractor ("Switcher"); hereinafter referred as the CMV and/or Switcher. Stanley was in the process of repair welding the loading dock bumpers as assigned by the Motor Carrier, Old Dominion.

The crushing was caused by that of Stovall as he was backing the CMV chassis semi-trailer inattentively and not properly using the mirrors on his Switcher, as required by the FMCSR and/or industry standards of care when backing a CMV semi-trailer and/or Switcher.

In addition, Stovall failed to G.O.A.L. (GOAL) or *Get Out and Look* method and requirement before engaging and committing his Switcher coupled to the pup CMV semi-trailer in rearward backing up movement. Image #1 is representative of the CMV combination which Stovall was operating on the day and time of the subject pedestrian crushing incident:



**Image #1**                                                                          **Source: SLTC PCI**

**4.0 Assignment:**

The undersigned has been requested to examine all of the documents listed in the Document's Reviewed section of this report. Apply the knowledge, experience and education derived from in-part fleet operation, management, and ownership, along with standards of care regarding fleet safety and FMCSA-MCSAP Level 1 CVSA roadside Motor Carrier inspection enforcement training.

Apply knowledge and experience as applicable regarding the FMCSR and/or industry standards of care regarding Stovall, and the CMV and/or Switcher. Apply the FMCSR when and where applicable from both a regulatory standpoint and/or as a matter of being used as an industry standard of care.

Draw on the universe of information collected and known, form a set of opinions as to causation and/or contributing factors regarding the crushing injury to Stanley and as to how the subject pedestrian crushing incident would not have occurred had the FMCSR and/or industry standards of care and best practices been complied with and/or employed by Stovall and/or Old Dominion.

**5.0 Introduction and History:**

The subject pedestrian crushing incident occurred due to Stovall and/or Motor Carrier, Old Dominion operating the subject Switcher in a negligent and inattentive manner on multiple levels.

When a professional Switcher driver is operating a Switcher in an area where known pedestrians are or may be working, walking, or just meandering, the Switcher driver has a special duty to be on high alert and operate in a manner of extreme caution, especially when backing. In other words, whenever he/she is in the need to place their Switcher into motion, forward or backwards, the professional Switcher driver must be assured the area the driver intends to occupy with the Switcher is free of vulnerable pedestrians and/or vulnerable road users.

In addition, the professional Switcher operator has a further duty to be aware of signs and/or evidence that suggest to pedestrian activity in the area in which he intended to operate and/or back the CMV semi-trailer, and further investigate when necessary and/or warranted.

The aforestated must be accomplished by means employing the GOAL method followed by proper, effective, and thorough mirror checks whenever backing is required, as in the same manner, it must be assured of no pedestrians are in the front of the CMV and/or Switcher when moving in the rearward or forward direction of travel. In other words, the CMV and/or Switcher driver must be assured of a free and clear space cushion before engaging in travel in any direction.

CMV and/or Switcher drivers are either trained and/or are supposed to be trained in the proper usage of mirrors when backing a Switcher with a coupled CMV semi-trailer. As such, if a Switcher driver becomes inattentive and/or simply assumes clearance in his/her backing path of travel, strikes an object or pedestrian, the CMV and/or Switcher driver is typically adjudicated as being the one that could have prevented the backing caused subject pedestrian crushing incident, based on industry standards of care. If the Switcher driver fails in this respect, the preventability standard can clearly be used against the professional Switcher driver's actions and/or inactions as to causation.

Addressing such standards of care in terms of preventability regarding pedestrians is the *National Safety Council* (NSC) – *A Guide to Determine Motor Vehicle Accident Preventability*, note that NSC refers to a *Motor Vehicle* opposed to the strict definition of a CMV. Within this standard, they near always point to the professional driver in terms of preventability regarding pedestrian collisions. In the section preventability regarding *Collisions Involving Passengers* is in-part defined as such:

➢ **Collisions Involving Pedestrians –** *Most court decisions generally rule in favor of any pedestrian hit by a <u>moving vehicle</u>.*

Then, in the same publication, the NSC states to preventability in terms of backing of *Motor Vehicles* and/or semi-trailer CMVs that are coupled to a Switcher:

➢ **Collisions While Backing –** *The organization should rule practically all collisions that occur while <u>a vehicle</u> is backing preventable.*

Using a combination of these two preventable actions, combined, the subject pedestrian crushing incident would clearly be preventable. The NSC definitions will be discussed further hereunder.

---

The area in where the subject pedestrian backing collision occurred was concrete slabbing beyond the concrete loading dock apron. This is a typical type design for more modern-day warehousing facilities and/or terminals. Often typical in design to aide in the prevention of sinking landing gear of uncoupled semi-trailers.

The subject Memphis, Tennessee Old Dominion facility is a very large break-bulk shipping terminal where LTL loads are reconfigured for further shipment. The specific area where the subject pedestrian crushing incident occurred is reserved for what are considered "pup" trailers that are used in OTR shipments of doubles and triples.

At the time of the subject pedestrian crushing incident, the pup trailers were pulled away from the loading docks in so that Stanley could fulfill his assigned welding project on a number of loading docks firming up the steel structures of the loading docks, most notably the black rubber bumper frames of which are often subjected to harsh conditions of semi-trailers backing into the loading docks.

Stanley was given the third party contracted task of welding the steel loading dock apparatus in an effort to repair the same, as aforestated. To appreciate the hazards before Stanley, one must consider the mere assigned task of Stanley.

Welding is a noisy process between the sound of the arc welder machine and the steel grinder amongst other issues. Constant noise emanates from the actual sound of the welding from the electrode rods of which gives off a constant electrocution sound until the electrode rod is consumed or the welder simply stops, this occurs right near the welder technician. Then there is the sound of slag chipping after the weld bead has been run that must occur after each of the welds. The series of images below represent the subject loading dock and the repairs being made by Stanley:



**Image #2**                                                                     Source: SLTC PCI

Image #2 above is of the loading dock where the subject pedestrian crushing incident occurred. The warehouse floor level of this loading dock is approximately 48 inches above the surface of the lot. Those areas labeled as "1" and "4" are the outside edges of

the aforementioned black rubber bumper frames which will be described in detail hereunder.



**Image #3**                                                                                          **Source: SLTC PCI**

Image #3 reflects a loading dock at the Old Dominion facility which is not the loading dock where the subject pedestrian crushing incident occurred. However, it is of the same design and approximately the same dimensions as the subject loading dock. The area labeled "6" is at the left end of the loading dock/rubber bumpers and has not received the welding repairs at the time the photograph was taken. As such, Image #4 is of the left end of the loading dock where the subject pedestrian crushing incident occurred, and the repair welds are visible below the "1" label.



**Image #4**                                                    **Source: SLTC PCI**



**Image #5**                                                    **Source: SLTC PCI**

Much like the aforementioned images, Image #5 reflects a loading dock at the Old Dominion facility which is not the loading dock where the subject pedestrian crushing incident occurred. However, it is of the same design and approximately the same dimensions as the subject loading dock. The area labeled "9" is at the left end of the loading dock/rubber bumpers and has not received the welding repairs at the time the

photograph was taken. As such, Image #6 is of the left end of the loading dock where the subject pedestrian crushing incident occurred, and the repair welds are visible below the "4" label.



**Image #6**                                                                                           **Source: SLTC PCI**

Stanley would have been working around considerable self-created and surrounding industrial noises. There would have been additional noises created as background noise such as a forklift in near constant usage on the loading dock area.

———————————————————

At a truck terminal and/or warehousing operation there are numerous hazards to all parties within the CMV travel area, whether its loading/offloading, trailer creep from loading docks, trailer collapse, pedestrian hazards around CMVs, Switcher activity, bobtail and coupled tractors, etc.

It is therefore the duty of the Switcher driver to follow not only the FMCSRs as a standard of care and regulations, but it is also important to observe facility policy, policies intended to keep persons safe from harm. Blocking such loading dock access by the terminal is one such method to protect such workers.

Additionally, as the host facility, Old Dominion should have required any and all guest persons that are subjected to foot traffic to be wearing high visibility safety vests. Many trucking terminals around the US require such donning of "high-vis" vests, even when CMV drivers step out of their CMV they are required to wear a high-vis vest.

Minimally, if it is OSHA regulatory determined that a high-vis vest is not practical and/or safe for use by a welder due to potential flammability issues, as the host facility, Old Dominion should have barricaded the area in which Stanley was working.

## 6.0 Document Examination:

There were various documents examined as listed below in "Documents Reviewed" section of this report. Throughout the review process the specific points, testimony and issues of examination are included in this section of the report while they are often applied to industry standards of care and the FMCSR, in combination with the undersigned's years of experience, training and knowledge.

### 6.1 Federal Motor Carrier Safety Regulations-

The Federal Motor Carrier Safety Regulations (FMCSRs) were established in the year 2000 in an effort to reduce the number of CMV crashes and incidents resulting in injury and/or death involving Commercial Motor Vehicles. Regulations enforced to protect the motoring public, pedestrians and professional CMV drivers alike. In other words, cause for Motor Carriers and/or their drivers to comply with a set of regulations that would apply to FMCSA registered Motor Carriers, thereby causing said drivers to comply through safety policies and procedures that would require compliance with such regulations.

It is acknowledged that the Old Dominion Switcher itself is not subjected to the FMCSR unless it enters upon public roadways in commerce, however, the semi-trailer in and of itself is by definition in the FMCSR:

> ➢ *FMCSR § 390.5 Definitions. Unless specifically defined elsewhere, in this subchapter:*
>
> *Commercial motor vehicle means any self-propelled <u>or towed motor vehicle</u> used on a highway in interstate commerce to transport passengers or property when the vehicle -*
>
> *(1) Has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater; or*
>
> *(2) Is designed or used to transport more than 8 passengers (including the driver) for compensation; or*
>
> *(3) Is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or*

*(4) Is used in transporting material found by the Secretary of Transportation to be hazardous under 49 U.S.C. 5103 and transported in a quantity requiring placarding under regulations prescribed by the Secretary under 49 CFR, subtitle B, chapter I, subchapter C.*

The term *"used on a highway"* in the definition of CMV aforestated is paramount when considering the *Interpretation* hereunder of *FMCSR § 390.3, Question #16* wherein CMVs on private property are regulated under the FMCSR. In tandem, one must consider the definition of *Motor Vehicle* as likewise referenced in *FMCSR § 390.5* wherein it specifically defines the *semi-trailer* or *trailer* as a CMV.

> ➢ **Motor vehicle** *means any vehicle, machine, tractor, <u>trailer</u>, or <u>semitrailer</u> propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration, but does not include any vehicle, locomotive, or car operated exclusively on a rail or rails, or a trolley bus operated by electric power derived from a fixed overhead wire, furnishing local passenger transportation similar to street-railway service.*

Lastly, if the issue is challenged in terms of the FMCSRs being applicable on private property due to the aforestated language in the definition of *Motor Vehicle* being *used upon the highways*, this would be a nonsensical and an improper argument as it is merely referencing the overarching purpose of a CMV as opposed to only when the definition and/or regulation applies:

> ➢ **FMCSR § 390.3: General applicability. Interpretations-**
>
> **Question 16:**
>
> *a. Are vehicles which, in the course of interstate transportation over the highway, are <u>off the highway</u>, loading, unloading or waiting, subject to the FMCSRs during these times?*
>
> *b. Are vehicles and drivers used <u>wholly</u> within terminals and on premises or plant sites subject to the FMCSRs?*
>
> *Guidance:*
>
> *a. Yes.*
>
> *b. No.*

If the subject pup semi-trailer were not road registered for motor carriage commerce and *wholly* used within the terminal (such as a storage trailer), it would not be subjected to the FMCSR, therefore, the Switcher and the hypothetical non-registered semi-trailer would not be subjected to the FMCSR. However, the reality is that the subject semi-trailer is registered as motor carriage equipment for purposes of commerce; therefore, it alone must be operated to the applicability of the FMCSRs based solely on the aforestated *Definitions* and *Interpretation*.

In terms of driver Stovall, by way of him operating the Switcher solely on Old Dominion property, he himself would not be subjected to the FMCSRs while operating the Switcher.

In terms of Stovall's licensure class, it is believed he did not have a CDL; however, irrespective of his licensure class the FMCSR's can and should be used as a measuring stick as to his performance in terms of a standard of care as opposed to a tool of regulatory enforcement while operating a Switcher coupled to a semi-trailer CMV.

The undersigned is using for the purposes of this report the FMCSR's and AAMVA CDL Manual as a basis of a standard of care as opposed to a matter of regulatory concern regarding Stovall's actions and/or inactions. If Stovall possess no CDL as is believed to be the case, the *FMCSR § 383* nor the AAMVA CDL Manual would apply from the strict sense of regulatory compliance; however, prudence would strongly suggest that he should have been so instructed to the same level as his Old Dominion over-the-road counterparts operating articulated (5th wheel) CMV's in commerce as is a Switcher coupled to a semi-trailer.

———————————————

Such FMCSRs used as a standard of care that are germane to the subject pedestrian crushing incident and are the duty of the CMV driver and his Motor Carrier employer; FMCSR's that are intended to prevent crashes and/or incidents that will inevitably save lives of not only of the CMV driver, but the pedestrian public as well are such that apply to the subject pedestrian crushing incident of Sunday morning, July 12, 2020.

Over the decades, the FMCSR's have grown substantially as the FMCSA, industry and academia learned more as to the causative and preventative effects of Motor Carrier operations. As such, the regulations currently cover a plethora of areas, all intended towards safety of the general motoring public, pedestrians as stated, and the CMV drivers and the protection of property.

At the risk of redundancy, to make it clear, although the Switcher tractor in and of itself is not regulated under the FMCSR, professional Switcher driver Stovall clearly is because of the fact that his Switcher was then coupled to a CMV as defined in *FMCSR § 390.5* as defined above. Therefore, the combination unit must be operated in a safe manner as prescribed in both the FMCSR and AAMVA CDL Manual wherein they prudently should

be used as standards of care tools of instruction as opposed to a matter of an enforceable (FMCSR) regulation.

On that basis, throughout the balance of this report, the FMCSR and AAMVA CDL Manual will often be cited; however, when and where appropriate they should be considered standards of care as opposed to matters of regulatory enforcement.

### 6.1.1 FMCSR Uniformity-

The FMCSR's as the Federal Motor Carrier Safety Regulations, was essentially an effort to cause one set of uniform regulations for Interstate Commerce purposes. In this manner, the FMCSRs control movement from a regulatory standpoint from state to state rather than the State of Tennessee, State of Kentucky, and the State of Indiana, for example, each having their own separate set of motor carriage state regulations.

Additionally, the FMCSR even caused the regulating of professional CMV drivers that operate in Interstate Commerce, wherein such professional CMV drivers are required to be licensed to the regulatory standards codified in the FMCSRs. Such professional CMV driver licensing falls under the Commercial Driver License, or the "CDL" requirements found within FMCSR *§ 383*.

The FMCSRs are substantially beneficial to the motoring public and pedestrian traffic in that they strive to cause Motor Carriers, therefore, professional CMV drivers, to comply with a set of Interstate and/or Intrastate Commerce uniform regulations. Enforcement of such federal regulations is compensated to the States by way of FMCSA-MCSAP.

If a Motor Carrier chooses to comply with such obligatory regulations, there is a reasonable expectation of pernicious preventable crashes/incidents to be reduced for that Motor Carrier operation. Juxtaposed, when a Motor Carrier makes no or limited effort in compliance, crashes/incidents can be expected to increase.

In the same manner, if an operation of like CMVs is undertaken such as terminal Switcher operations juxtaposed to that of over-the-road (OTR) in commerce motor carriage operations, it is a prudent measure to make certain the Switcher drivers are so instructed to the same level as that of the OTR counterparts; prudent yet not obligatory.

### 6.2 FMCSR General Applicability.

Prefacing hereunder, it is paramount to understand that a Switcher driver once coupled to the regulated CMV semi-trailer, he/she is then as a matter of a standard of care is obligated to comply with the points of the FMCSR's *Required Knowledge* (addressed hereunder) as applicable, even without possessing a CDL and operating on private property.

It is a Motor Carrier's duty to cause for their *employee* CMV and/or Switcher driver(s) to be knowledgeable in the FMCSR. This can be accomplished through road tests, by way of training programs, handouts, safety awards, safety bonuses, disciplinary measures, and safety meetings to name a few such methods.

When a driver is found as to having violated the FMCSR and/or Motor Carrier safety policies, the driver must be disciplined. Otherwise, the employee driver may very well only observe the same as corporate bravado that may well cause an attitude of implied consent as to the CMV driver's driving mannerisms and/or habits; even to overlook critical safety items such as mirror adjustment and audible backup alarms that may not be functional to the extent in which they were designed, often resulting from age.

It is the non-delegable duty of the Motor Carrier (Old Dominion) to ensure that their CMV and/or Switcher driver *employees* are so instructed in the FMCSR, therefore the CDL Manual, including but not limited to the tasks of driving and CMV inspection procedures. It is likewise prudent for a Motor Carrier to apply the same regulatory standards of care to that of their Switcher drivers as they cause their CDL CMV drivers to undergo:

> ➤ *§ 390.3 General Applicability (e) Knowledge of and compliance with the regulations.*
>
> *(1) Every employer <u>shall be knowledgeable</u> of and <u>comply with all regulations</u> contained in this subchapter which are applicable to that motor carrier's operations.*
>
> *(2) Every driver and employee <u>shall be instructed</u> regarding, and <u>shall comply</u> with, all applicable regulations contained in this subchapter.*

The FMCSR is very clear in this respect. The driver *<u>shall</u>* be so instructed in the FMCSR as it pertains to his/her discipline of driving a CMV even if it is a semi-trailer coupled to a non-CDL required CMV Switcher.

## 6.3 Required Knowledge of the CMV and/or Switcher Driver-

Motor Carrier Old Dominion is compelled to comply with the FMCSRs due to its interstate authority. Their CDL CMV drivers must demonstrate knowledge of various aspects of the FMCSR's. Specifically, the CDL CMV driver must demonstrate knowledge of, but not limited to that of *FMCSR § 383.111* although *§ 383.111* is critical knowledge in the undersigned's opinion. As a standard of care the Motor Carrier should apply the same *Required Knowledge* to that of their non-CDL CMV Switcher driver(s).

In this specific regulation, which is the basis and foundation for CMV-CDL driver's *Required Knowledge*, as it relates to the subject pedestrian crushing collision it still is

required to be complied with from a standards of care because Stovall is in movement of a semi-trailer that is regulated by the FMCSR at a terminal of which clearly is regulated in terms of CMV's within the terminal; therefore, it is required by the non-CDL CMV and/or Switcher driver to understand twenty general areas of the "*Required Knowledge*" regulation. These obligatory rules of *Required Knowledge* are to be a constant source to a CMV and/or Switcher driver's knowledge base. They are as follows:

> ➢ *§ 383.111 Required Knowledge. (a) All CMV operators must have knowledge of the following 20 general areas:*

1. *Safe Operations Regulations;*
2. *Safe Vehicle Control Systems;*
3. ***CMV Safety Control Systems;***
4. ***Basic Control;***
5. *Shifting;*
6. ***Backing;***
7. ***Visual Search;***
8. ***Communication****;*
9. *Speed Management;*
10. ***Space Management;***
11. *Night Operations;*
12. *Extreme Driving Conditions;*
13. ***Hazard Perceptions;***
14. *Emergency Maneuvers;*
15. *Skid Control and Recovery;*
16. *Relationship of Cargo to Vehicle Control;*
17. ***Vehicle Inspections;***
18. *Hazardous Materials;*
19. *Mountain Driving;*
20. *Fatigue and Awareness*

Irrespective of how long Stovall operated a CMV and/or Switcher for Old Dominion, be it a day or 10-years, it is still incumbent upon Stovall, as a professional CMV and/or Switcher driver, to not only know be aware of the current Regulations, but more importantly, he must apply that knowledge to his driving habits and skill sets in order to avoid CMV and/or Switcher crashes/incidents and the great risk of death or serious injury to other motorists and/or pedestrians.

As stated, it is further incumbent upon Stovall's Motor Carrier employer (*FMCSR § 390.3*), in this case Old Dominion, to ensure their CMV and/or Switcher driver and/or employees possess this knowledge by instruction, of which there is no evidence observed in the employee file for Stovall. It will be demonstrated in this section of this report that Stovall was severely deficient of the *Required Knowledge*, even so much as in the very basic rudimentary level of understanding and application.

In general, as to this specific *Required Knowledge* section, the following coincide with the parts of the *Required Knowledge* that were not exercised and/or were in all probability ignored when Stovall was backing his CMV that he was given care, custody, dispatch, and control of at the time of the pedestrian crushing; entrusted with such care, custody, dispatch, and control by his Motor Carrier employer, Old Dominion:

> *§ 383.111 Required Knowledge (a) All CMV operators must have knowledge of the following 20 general areas:*

> *(3) CMV safety control systems.*

>> *(i) Proper use of the motor vehicle's safety system, including lights, <u>horns</u>, <u>side and rear-view mirrors</u>, proper mirror adjustments, fire extinguishers, symptoms of improper operation revealed through instruments, motor vehicle operation characteristics, and diagnosing malfunctions.*

>> *(ii) CMV drivers must have knowledge of the <u>correct procedures</u> needed to use these safety systems in an emergency situation, e.g., skids and loss of brakes.*

> *(4) Basic control. The proper procedures for <u>performing various basic maneuvers</u>, including:*

>> *(ii) <u>Putting the vehicle in motion</u> and stopping;*

>> *(iii) <u>Backing in a straight line</u>; and*

> *(6) Backing. The procedures and rules for various backing maneuvers, including:*

>> *(i) <u>Backing principles and rules</u>; and*

>> *(ii) <u>Basic backing maneuvers</u>, e.g.,, straight-line backing, and backing on a curved path.*

> *(7) Visual search. The importance of <u>proper visual search</u>, and proper visual search methods, including:*

>> *(i) Seeing ahead and <u>to the sides</u>;*

>> *(ii) <u>Use of mirrors</u>; and*

>> *(iii) <u>Seeing to the rear</u>.*

> *(8) Communication. The principles and procedures for proper communications and the hazards of failure to signal properly, including:*

     *(ii) Communicating presence, e.g.,, <u>using horn</u> or lights to signal presence; and*

    **(10) *Space management.*** *The procedures and techniques for controlling the <u>space around the vehicle</u>, including:*

      *(iii) Space to the sides*

    **(13) *Hazard perceptions.*** *The basic information on <u>hazard perception</u> and <u>clues for recognition of hazards</u>, including:*

      *(ii) <u>Road user activities</u>.*

    **(17) *Vehicle inspections.*** *The objectives and proper procedures for performing vehicle safety inspections, as follows:*

      *(ii) The effect of <u>undiscovered malfunctions</u> upon safety.*

The sum total of the failures of Stovall when he backed his Switcher coupled to the CMV semi-trailer; absent of following the industry standards of care and the FMCSR, in particular *FMCSR § 383.111 Required Knowledge* was that Stovall failed to comply with eight out of 20 points of *Required Knowledge*, a 40% failure rate. Had he complied with the same as he was required, the subject pedestrian crushing incident would not have occurred.

Further, had his Motor Carrier employer, Old Dominion caused Stovall to be so instructed in the FMCSR in terms of *Required Knowledge*, and had he applied said instruction, the subject pedestrian crushing incident would not have occurred.

## 6.4 Smith-System Defensive Driving-

Specifically, the Smith-System – arguably the premier defensive driver training program in the North America, if not the world – has a program that would have trained Stovall on tactics to more safely negotiate motor vehicle operations in general while in the process of backing.

Simply stated, if Stovall were trained in the Smith-System, or thereabouts equivalent, and incorporated his teachings into his daily Switcher driving habits, this crushing collision with Stanley would not have occurred.

The Smith-System (*The 5-Keys to Backing Safely*) trains as to the following methodology when backing/parking. There are five primary key elements in the driver training. In these five primary key elements, there are sub-elements; they are as follows:

**Smith-System, The 5-Keys to Backing Safely:**

**Key #1: Aim High in Steering**

 ➢ *Evaluate the parking environment and its unique characteristics.*
 ➢ *Scan the parking area and plan for your departure when you choose your parking space.*
 ➢ *Look for opportunities to avoid backing. Use pull through or curb side spaces, if available.*

**Key #2: Get The Big Picture**

 ➢ *Know what objects are around your vehicle and their proximity to your vehicle.*
 ➢ *Don't assume you know what is around your vehicle: Get Out and Look (G.O.A.L.)*
 ➢ *Know what may be under and above your vehicle as well as what is around it.*

**Key #3: Keep Your Eyes Moving**

 ➢ *Move your head and eyes to scan the entire area around your vehicle. Don't fixate.*
 ➢ *Back slowly to allow time for eye activity and reduce possible damage if you hit something.*
 ➢ *Incorporate the available technology in your scanning pattern but don't use it exclusively.*

**Key #4: Leave Yourself an Out**

 ➢ *Whenever possible, find a parking space that is surrounded by space.*
 ➢ *Back no further than you must.*
 ➢ *Choose a site with the fewest hazards whether it is other vehicles or objects.*

**Key #5: Make Sure They See You**

 ➢ *Seek eye-to-eye contact.*
 ➢ *Communicate. Use your warning devices to alert others.*
 ➢ *Don't move the vehicle until you are absolutely sure it is safe to do so.*

All of the **bolded** above primary key elements and sub-elements are bolded as they are either directly or indirectly associated to necessary Switcher driving behaviors as preventative actions to the subject crushing pedestrian collision.

---

According to ATRI's, *Predicting Truck Crash Involvement* from October 2005, it states the following as to defensive driver type training programs: *"Most directors require that new drivers go through both National Safety Council's Defensive Driving Program and/or Smith System Training".*

Had investment in proper defensive driver training been undertaken by Old Dominion, and subsequently been applied by Stovall in his driving habits and/or skills, they would have without question been preventative functions that would have averted the subject pedestrian crushing incident. This is all of course assuming that distracted driving or fatigue were not primary causative to the subject pedestrian collision, that being the case, the bolded Smith-System points listed above would be secondary, still nevertheless – very important

Had the Smith-System, or any other reputable defensive driver-training program been initiated by Old Dominion and applied by Stovall, the subject pedestrian crushing collision would never have occurred.

## 6.5 Backing and Preventability (G.O.A.L.)-

A *combination* unit essentially means a truck-tractor coupled to a semi-trailer; in this case it would be a Switcher (still a truck-tractor) coupled to a CMV semi-trailer. The *combination* unit does not in fact become a *combination* unit until such time that the truck-tractor is actually coupled by both the truck-tractor's fifth wheel jaws securely holding the semi-trailer's king pin in place once fully backed under the semi-trailer.

Then there is the issue of the airlines of the truck-tractor being applied to the semi-trailer's glad hands. Without one and/or both of these being applied, the semi-trailer is not fully coupled; therefore, not a *combination* unit.

The AAMVA CDL Manual of which has substantially been adopted by the State of Tennessee is very specific in the backing requirements by a CMV driver when coupled to a semi-trailer:

➢ ***AAMVA CDL Manual: 2.2.4 – Backing Safely***

*Because you cannot see everything behind your vehicle, backing is always dangerous. Avoid backing whenever you can. When you park, try to park so you*

*will be able to pull forward when you leave. When you have to back, here are a few simple safety rules:*

*Start in the proper position.*
*Look at your path.*
*Use mirrors on both sides.*
*Back slowly.*
*Back and turn toward the driver's side whenever possible.*
*Use a helper whenever possible.*

*These rules are discussed in turn below.*

***Look at Your Path.*** *Look at your line of travel before you begin. Get out and walk around the vehicle. Check your clearance to the sides and overhead, in and near the path your vehicle will take.*

***Use Mirrors on Both Sides.*** *Check the outside mirrors on both sides frequently. Get out of the vehicle and check your path if you are unsure.*

***Back slowly.*** *Always back as slowly as possible. Use the lowest reverse gear. That way you can more easily correct any steering errors. You also can stop quickly if necessary.*

The AAMVA CDL Manual states twice in the section of *Backing Safely* that the CMV driver must for safety purposes GOAL or Get Out and Look. This backing principle should be so instructed to any CMV and/or Switcher operator wherein their duties require such backing, failure to do so is a matter of a careless disregard and negligence by the Motor Carrier.

**6.5.1 AAMVA CDL Manual-**

Although the following section of the AAMVA CDL Manual had been addressed prior, it is necessarily redundantly addressed hereunder due to the important nature of what the CMV and/or Switcher driver should know, being *Required Knowledge*, even though Stovall was not required to possess a CDL as a matter of FMCSR regulations:

*AAMVA CDL Manual:* (as a standard of care as opposed to a matter of regulations)

➢ *2.2.4 – Backing Safely*

*Because you cannot see everything behind your vehicle, backing is always dangerous. Avoid backing whenever you can. When you park, try to park so you*

*will be able to pull forward when you leave. When you have to back, here are a few simple safety rules:*

- *Start in the proper position.*
- *Look at your path.*
- *Use mirrors on both sides.*
- *Back slowly.*
- *Back and turn toward the driver's side whenever possible.*
- *Use a helper whenever possible.*
- *These rules are discussed in turn below.*

**Start in the Proper Position.** *Put the vehicle in the best position to allow you to back safely. This position will depend on the type of backing to be done.*

**Look at Your Path.** *Look at your line of travel before you begin. Get out and walk around the vehicle. Check your clearance to the sides and overhead, in and near the path your vehicle will take.*

**Use Mirrors on Both Sides.** *Check the outside mirrors on both sides frequently. Get out of the vehicle and check your path if you are unsure.*

**Back Slowly.** *Always back as slowly as possible. Use the lowest reverse gear. That way you can more easily correct any steering errors. You also can stop quickly if necessary*

**Back and Turn Toward the Driver's Side.** *Back to the driver's side so that you can see better. Backing toward the right side is very dangerous because you can't see as well. If you back and turn toward the driver's side, you can watch the rear of your vehicle by looking out the side window. Use driver-side backing--even if it means going around the block to put your vehicle in this position. The added safety is worth it.*

**Use a Helper.** *Use a helper when you can. There are blind spots you can't see. That's why a helper is important. The helper should stand near the back of your vehicle where you can see the helper. Before you begin backing, work out a set of hand signals that you both understand. Agree on a signal for "stop."*

➢ ***2.4 – Seeing***

*To be a safe driver you need to know what's going on all around your vehicle. Not looking properly is a major cause of accidents.*

### *2.4.2 – Seeing to the Sides and Rear*

*It's important to know what's going on behind and to the sides. Check your mirrors regularly. Check more often in special situations.*

The AAMVA CDL Manual is in lay terms an educational informative manual that must be followed in order to keep compliance with the FMCSR by the CDL CMV driver. If Stovall were so instructed as a CMV and/or Switcher driver voluntarily by his Motor Carrier employer, Old Dominion, in accordance with the aforestated, and if he applied the same, the subject incident would not have occurred.

Stovall was not applicable to the FMCSR while operating a Switcher independently, without being coupled to a semi-trailer. However, at the time of the subject pedestrian crushing incident Stovall was coupled to a CMV semi-trailer, of which is defined as a CMV even on private property; therefore, he must operate the combination CMV and/or coupled Switcher in accordance with the FMCSR's obligatory safety requirements, with or without a CDL, essentially what creates best practices.

—————————————————————

A CMV and/or Switcher driver is in nearly every circumstance considered to be at fault from a *preventable accident* standpoint when the CMV strikes an object or person while in the process of backing a CMV. The reason: it is only the CMV and/or Switcher driver that has been entrusted with the care, custody, and <u>control</u> of the Switcher, coupled with a CMV semi-trailer. There are no other person's hands on the steering wheel, utilization of the mirrors, engaging the truck-tractor in gear, use of the throttle or brake, it is all on the CMV and/or Switcher driver.

There are a number of safe practices a CMV and/or Switcher driver should do both before backing a CMV or while backing a CMV and/or Switcher. If in fact Stovall had observed and executed these safe practices, the subject pedestrian crushing incident would not have occurred.

In addition to others, a CMV and/or Switcher operator should perform the GOAL method. The GOAL method is "*Get Out and Look,*" a basic tenant (or should be) of any safe Motor Carrier safety program and should be engrained in the professional CMV and/or Switcher driver's driving mannerisms.

—————————————————————

The *NSC* published a booklet called *A Guide to Determine Motor Vehicle Accident Preventability* in 2004/2005. This booklet provides different scenarios whereas collisions occur, and then they provide determination as to preventability.

Regarding backing incidents, the *NSC* states the following: *"Collisions While Backing: The organization should rule practically <u>all</u> collisions that occur while a vehicle is backing preventable."* (NSC, p. 13).

The NSC further states in a given scenario where the CMV and/or Switcher driver is adjudicated as to being at fault where a vehicle drove behind a backing CMV, unnoticed by the CMV driver: *"the Review Committee ruled this collision preventable. The driver failed to monitor the mirrors adequately since a car had time to drive behind the truck without being noticed. ...."*

In addition, with respect to preventability, the FMCSA has specific language in the determination process when considering preventability, using the following as a standard of care as opposed to a matter of regulatory concern, the incident was preventable.

The FMCSR states the following as to *Part 385, Appendix A*: *"If a driver, who exercises normal judgment and foresight, could have foreseen the possibility of the accident that in fact occurred, and avoided it by taking steps within his/her control which would not have risked causing another kind of mishap, the accident was preventable.*

Furthermore, again, as a standard of care as opposed to a matter of regulatory concern, in the definition section of *FMCSR § 385.3*, a *preventable accident* is defined as such:

> ➢ *FMCSR § 385.3 "Preventable accident on the part of a motor carrier means an accident ... that could have been averted but for an act, or failure to act, by the motor carrier or the driver".*

Based on the determining of preventability from the FMCSA standpoint, Stovall would be determined to be at fault as he had the last best chance to prevent this pedestrian collision from occurring by proper mirror usage and affirmatively using the GOAL method. Backing incidents and/or accidents are near always preventable by the professional driver.

According to NATMI as to preventability, .... NATMI states: **NATMI, Preventability of Accidents** – *"The decision of preventability should always be made solely on the basis of what the company driver did or did not reasonably do to prevent the accident.".*

By definition within not only the FMCSR, but all respectable standards of care within the Motor Carrier safety universe, the subject pedestrian crushing collision caused by Stovall, thereby Old Dominion as well was fully preventable as it was foreseeable by Stovall.

Furthermore, preventability of accidents, crashes and/or incidents are not prevented by means of assumptions; assumptions that are made in lieu of sound safety protocols, policies, regulations, and standards of care. As such, Stovall clearly made an assumption.

Assumptions are not a substitute for good policies and/or standards of care. Assumptions cause accidents as they are directly correlated with lackadaisical and complacent attitudes towards safety; therefore, assumption caused incidents when there are policies and/or standards of care to prevent the same are fully preventable, by definition.

## 6.6 Proper Mirror Usage-

It is the duty of the professional CMV and/or Switcher driver to both properly and adequately utilize his/her mirrors when in the process of backing. However, exclusively using of the Switcher mirrors as a substitute of using the GOAL method is unacceptable when conditions warrant. Both methods must be utilized in tandem with one another when applicable.

In terms of the when warranted provision, when the Switcher driver observes circumstances and/or conditions giving him clues as to potential foot traffic, or workers being present, Stovall must manage his backing accordingly.

The welder truck of Stanley was located in the immediate vicinity of the loading dock slot that Stovall intended to back. This should have been the first clue causing an immediate investigation by Stovall, otherwise known as a "get out and look".

The second such clue was the fact that the adjacent pup trailers were pulled forward away from the loading dock, again, another clue as to requiring a get out and look safety check. Had Stovall got out and looked, the subject pedestrian crushing incident would not have occurred.

The AAMVA CDL Manual calls for both getting out and looking (GOAL) at your path as well as proper mirror usage.


## 6.7 Post-Incident Inspection-

The undersigned performed a Post-Incident inspection of the loading dock area wherein the pedestrian collision occurred on August 6, 2020. For all intended purposes, the loading dock apron and area was unremarkable.

The Switcher inspection was likewise conducted on the same day, likewise, the Switcher inspection was unremarkable.


## 7.0 Consolidated Opinions:

Based upon the foregoing analysis, as a Commercial Motor Vehicle expert possessing approximately 30 years-experience in the Transportation Industry and based upon what is good and safe practices in the Transportation Industry, I have come to form the following opinions as to the pedestrian collision that caused injury at the Old Dominion terminal located at 2098 Spirit of '76 Drive in Memphis, Tennessee.

I express these opinions with a reasonable degree of professional certainty and probability:

1. It is the undersigned's opinion that irrespective of exactly where or how Stovall backed up his truck-tractor, he is responsible for any incident that occurs behind his CMV and/or Switcher as a result of such backing.

2. It is the undersigned's opinion that the backing collision with Stanley was completely preventable within the definition of all industry standards of care as well as the FMCSR definition of preventable accident when considering it a standard of care as opposed to a matter of regulatory concern.

3. It is the undersigned's opinion that the failure of Old Dominion to adequately instruct Stovall regarding his CMV and/or Switcher driving skills, such as a comprehensive defensive driver training program was a contributing factor to the subject pedestrian crushing collision.

4. It is the undersigned's opinion that Old Dominion had a duty to so instruct Stovall in the duty of ensuring that the area he intended to back the subject CMV and/or Switcher into was free of pedestrian and/or other hazards. The most common and best practice used to accomplish this driver duty of instruction is by ensuring the CMV and/or Switcher driver is adequately instructed in the GOAL method.

5. It is the undersigned's opinion that a CMV and/or Switcher driver that relies upon a passing by observation to his/her left or right from the cab of his/her Switcher as opposed to employment the GOAL method is not the proper assurance of the area not being pedestrian or object occupied. This method is proven as to being negligently, severely and dangerously flawed based on the simple fact of the subject crushing incident into pedestrian Stanley with the CMV and/or semi-trailer that is the proximate cause of the subject negligent crushing incident.

If Stovall were properly and/or adequately instructed in GOAL by his Motor Carrier employer, Old Dominion, and if he had applied the GOAL principle, the subject negligent crushing would not have occurred. As a Motor Carrier, Old Dominion either knew and/or should have known of the GOAL method as it is a matter of FMCSR regulation and they in all probability so instructed the same to their professional CMV drivers. GOAL, while not specifically referred as "GOAL" in the FMCSR is referred as to a general methodology in *FMCSR § 383.111*:

- *FMCSR § 383.111*

  *(6) **Backing.** The procedures and rules for various backing maneuvers, including:*

  *(i) Backing principles and rules; and*

*(ii) Basic backing maneuvers, e.g.,, straight-line backing, and backing on a curved path.*

*(7) Visual search. The importance of <u>proper visual search</u>, and proper visual search methods, including:*

*(i) Seeing ahead and <u>to the sides</u>;*

*(ii) <u>Use of mirrors</u>; and*

*(iii) <u>Seeing to the rear</u>.*

Again, this non-delegable duty to so instruct is a duty of a Motor Carrier to instruct their professional CMV drivers. This same duty to instruct should be undertaken regarding CMV and/or Switcher drivers to ensure the safety of both other CMV and/or switcher drivers and pedestrians that may be in the terminal driving, working, walking and/or simply meandering about.

6.  It is the undersigned's opinion that Stovall, therefore Old Dominion had the last best chance to prevent the subject pedestrian crushing collision from occurring.

7.  It is the undersigned's opinion that the subject collision was fully preventable when considering the definition of a "preventable accident" (as a standard of care) according to the *FMCSA: Part 385, Appendix A: "If a driver, who exercises normal judgment and foresight, could have foreseen the possibility of the accident that in fact occurred, and avoided it by taking steps within his/her control which would not have risked causing another kind of mishap, the accident was preventable"*; and: *FMCSR § 385.3: "Preventable accident on the part of a motor carrier means an accident (1) that involved a commercial motor vehicle, and (2) that could have been averted but for an act, or failure to act, by the motor carrier or the driver".*

8.  It is the undersigned's opinion that **Stovall** failed to properly observe the presence of Stanley from his Switcher west-coast and convex mirror(s) while in the process of backing his Switcher coupled to the CMV semi-trailer into the subject loading dock slot.

9.  It is the undersigned's opinion that **Stovall** should have complied with, and his Motor Carrier employer, Old Dominion should have voluntarily caused compliance with the following as a standard of care as opposed to a matter of regulatory concern. Had such compliance been so instructed to Stovall, and if Stovall utilized such instruction in his CMV and/or Switcher operations, the subject incident would not have occurred: *FMCSR § 383.111 Required Knowledge, (3) CMV safety control systems. (i) Proper use of the motor vehicle's safety system, including lights, horns, side and rear-view mirrors, proper mirror adjustments, fire extinguishers, symptoms of improper operation revealed through*

*instruments, motor vehicle operation characteristics, and diagnosing malfunctions.*

10. It is the undersigned's opinion that Stovall should have complied with, and his Motor Carrier employer, Old Dominion should have voluntarily caused compliance with the following as a standard of care as opposed to a matter of regulatory concern. Had such compliance been so instructed to Stovall, and if Stovall utilized such instruction in his CMV and/or Switcher operations, the subject incident would not have occurred: *FMCSR § 383.111 Required Knowledge, (4) Basic control. The proper procedures for performing various basic maneuvers, including: (ii) Putting the vehicle in motion and stopping; (iii) Backing in a straight line.*

11. It is the undersigned's opinion that Stovall should have complied with, and his Motor Carrier employer, Old Dominion should have voluntarily caused compliance with the following as a standard of care as opposed to a matter of regulatory concern. Had such compliance been so instructed to Stovall, and if Stovall utilized such instruction in his CMV and/or Switcher operations, the subject incident would not have occurred: *FMCSR § 383.111 Required Knowledge, (6) Backing. The procedures and rules for various backing maneuvers, including: (i) Backing principles and rules; and (ii) Basic backing maneuvers, e.g., straight-line backing, and backing on a curved path.*

12. It is the undersigned's opinion that Stovall should have complied with, and his Motor Carrier employer, Old Dominion should have voluntarily caused compliance with the following as a standard of care as opposed to a matter of regulatory concern. Had such compliance been so instructed to Stovall, and if Stovall utilized such instruction in his CMV and/or Switcher operations, the subject incident would not have occurred: *FMCSR § 383.111 Required Knowledge, (7) Visual search. The importance of proper visual search, and proper visual search methods, including: (i) Seeing ahead and to the sides; (ii) Use of mirrors; and (iii) Seeing to the rear.*

13. It is the undersigned's opinion that Stovall should have complied with, and his Motor Carrier employer, Old Dominion should have voluntarily caused compliance with the following as a standard of care as opposed to a matter of regulatory concern. Had such compliance been so instructed to Stovall, and if Stovall utilized such instruction in his CMV and/or Switcher operations, the subject incident would not have occurred: *FMCSR § 383.111 Required Knowledge, (8) Communication. The principles and procedures for proper communications and the hazards of failure to signal properly, including: (ii) Communicating presence, e.g., using horn or lights to signal presence.*

14. It is the undersigned's opinion that Stovall failed in the basic rudimentary levels of CMV and/or Switcher driving as expected from a professional CMV and/or Switcher driver. Such failure to apply said basic rudimentary level knowledge to

his CMV and/or Switcher driving skillset, as specified above in the *"Required Knowledge"* (as a standard of care, not regulatory) section of the FMCSR were proximate causes to the subject pedestrian crushing collision.

15. It is the undersigned's opinion that the FHWA's position on preventability regarding CMV incidents and accidents clearly demonstrate Stovall's failure to operate his CMV and/or Switcher in a manner that would be safe and good. The FHWA definition as to preventability is stated as such: FHWA, Commercial Vehicle Preventable Accident Manual applied as a standard of care: *"A preventable accident is one which occurs because the driver fails to act in a reasonably expected manner to prevent it."* Stovall clearly operated his Switcher coupled to the CMV semi-trailer in a manner that whereas he failed to act in a *reasonably expected manner.* Stovall, as a professional CMV and/or Switcher driver had a duty to the life, health, and safety of Stanley to operate in a manner that was good and safe. Further, Stovall failed to operate his CMV in a manner that *demonstrated an acceptable level of skill and knowledge.*

16. It is the undersigned's opinion that by way of examination of the details of the subject pedestrian crushing incident, it is clear *the driver* (Stovall) *fails*[ed] *to act in a reasonably expected manner to* prevent the subject collision by consistently and clearly checking all available mirrors.

17. It is the undersigned's opinion that by way of examination of the details of the subject pedestrian crushing incident, it is clear *the driver* (Stovall) *fails*[ed] *to act in a reasonably expected manner to* prevent the subject collision by failing to *Get Out and Look* before committing to backing his Switcher.

18. It is the undersigned's opinion that by way of NSC's opinion as to preventability of causing an accident while backing, the subject pedestrian crushing collision was fully preventable by that of Stovall and his Motor Carrier, *employer* alone. NSC; A Guide to Determine Motor Vehicle Accident Preventability as it relates to backing a CMV and/or Switcher: *Collisions While Backing: The organization should rule practically all collisions that occur while a vehicle is backing preventable. A professional driver is not relieved of responsibility to back safely when another person acts as a guide in the maneuver. A guide cannot control the movement of the vehicle. Therefore, the driver must continue to check all clearances.* It was only Stovall that was at the controls, in the driver's seat while backing his CMV, therefore the sole responsibility as to anything or persons becoming struck by Stovall while backing is his sole responsibility (and his Motor Carrier employer, Old Dominion).

19. It is the undersigned's opinion that Stovall failed in his duty to prevent the subject pedestrian crushing collision. Accordingly, Stovall's failure to prevent the subject pedestrian collision meets the definition as to the collision being preventable by the actions of Stovall alone. NATMI states: *NATMI, Preventability of Accidents –*

*"The decision of preventability should always be made solely on the basis of what the company driver did or did not reasonably do to prevent the accident.".*

20. It is the undersigned's opinion that by evidence of the unfolding of the collision, Stovall *did not reasonably* examine his driver-side west-coast mirror and convex (broad-view) mirror for pedestrian occupancy or obstructions during his backing maneuver.

21. It is the undersigned's opinion that Old Dominion should have tagged out and/or barricaded the specific loading dock(s) that Stanley was assigned to perform his welding tasks.

22. It is the undersigned's opinion that Stovall failed in the very basic requirement to exit his CMV for the purposes of *Get Out and Look*, otherwise known as "GOAL". Had Stovall executed this requirement the subject pedestrian crushing collision would not have occurred.

23. It is the undersigned's opinion that Stanley had every right and expectation that Stovall being a professional CMV and/or Switcher driver would be capable of backing his CMV and/or Switcher in a proper and safe manner. Stovall owed this duty to Stanley and any other pedestrians in his space cushion of operation.

24. It is the undersigned's opinion that Stovall operated his assigned CMV in a complete disregard to the rights and safety of others and was otherwise careless and inattentive in that he failed to maintain a proper lookout; he failed to make reasonable observations; and he failed to maintain proper control of his CMV.

25. It is the undersigned's opinion that Stovall failed in his duty to operate his CMV and/or Switcher in a manner that was safe and good in accordance with industry standards of care. As such he operated his CMV and/or Switcher in a reckless, careless, and negligent manner, thus causing the collision with Stanley.

26. It is the undersigned's opinion that if Old Dominion installed and displayed a red/green dock light system (non-obligatory), the subject pedestrian crushing incident would have in all probability been averted providing Stovall complied. If Stovall had complied with the red/green light system in alignment with a published and mandatory policy by Old Dominion that CMV semi-trailers are not to be backed into a loading dock so long as the red light is illuminated, the subject Pedestrian crushing collision would not have occurred.


**Documents Reviewed:**

➢ Defendant's Responses to Plaintiff's First Set of Interrogatories
➢ Isaac Stovall's Responses to Plaintiff's First Request for Admissions
➢ Old Dominion Email Notification of Accident

- ➢ Defendant's Job Description (Old Dominion)
- ➢ Isaac Stovall's Written Statement of Incident
- ➢ Isaac Stovall's Old Dominion Employee File
- ➢ Old Dominion Warehouse Worker's Claims Prevention Training Manual
- ➢ Switcher Performance Guidelines (Old Dominion)
- ➢ Switcher (Unit #9624005) Maintenance Records
- ➢ Old Dominion Photographs of Scene, Switcher, and Semi-Trailer
- ➢ SLTC PCI Photographs

## Equipment Utilized:

- Nikon D3300
- Lufkin 25 Steel Tape Measure

## References:

- Federal Motor Carrier Safety Regulation (§ 385.3; § 383; § 390.3§ 390.5; § 383.111; § 390.3 Interpretations; § 385, Appendix A
- NSC – A Guide to Determine Motor Vehicle Accident Preventability (pages 1, 13, 15 & 21)
- Smith-System: 5-Keys to Backing Safely
- AAMVA CDL Manual
- NATMI

**As the sole author of this report, I reserve the right to change or amend my conclusions and opinions based on information that was not available to me at the time of this report writing. Should the need for such changes or amendments be necessary I will submit the same to the retaining counsel of this report.**

**Reported by:**

**Scott L. Turner**
**Chief Consultant**